ATTORNEY FOR APPELLANT
Elizabeth A. Gabig
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED

May 22 2008, 3:11 pm

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 49S02-0805-CR-290

MICHAEL SWEATT,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Marion Superior Court, Criminal Division 1, No. 49G01-0412-MR-216344
The Honorable Tanya Walton-Pratt, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0604-CR-303

_____

**May 22, 2008**

**Shepard, Chief Justice.**


Michael Sweatt appeals from convictions for possession of a handgun by a serious violent felon and burglary. He argues that the trial court erred by enhancing his sentence for burglary under the general habitual offender statute based on the same prior felony conviction supporting the serious violent felon count. While we conclude that the enhancements themselves were proper, it nonetheless constituted error to order Sweatt's sentences to run consecutively, creating a double enhancement similar to the one we disapproved in Mills v. State.

## Facts and Procedural History

Late on the night of November 29, 2004, appellant Michael Sweatt persuaded Rochester Milam III and Jason Hamm to "hit" a house with him in order to make some money. They proceeded to the home of Kenneth Clarkson. After receiving no response to their knock at the front door of the unlighted house, the three men entered the garage, where they found computers, keyboards, and monitors. Milam and Hamm began carrying the computer equipment to Sweatt's car while Sweatt entered the house through a door to the utility room.

Shortly thereafter, Milam followed Sweatt into the house. He proceeded to climb the stairs, then came back down after hearing noises that suggested the residents had awakened. As Milam tried to open the front door to leave, Clarkson, the homeowner, grabbed his arms from behind and began asking questions. While Milam tried to escape, Clarkson heard a gunshot from the direction of the utility room. When he looked that way, Clarkson saw a male pointing a gun toward him. Clarkson threw Milam toward the front door, told him to get out, and retreated behind the stairway as the other man fired two more shots at him.

Milam reached Sweatt's car, where Hamm was already seated in the front passenger seat; Sweatt joined them from the direction of the garage. As Sweatt drove away, Milam noticed several DVDs with the computer equipment in the back seat. Clarkson later reported these same items missing to police.

Sweatt eventually pulled the car over on 25th Street near Stoney Brook Middle School. All three men exited the vehicle; Milam went to the rear to urinate while Sweatt and Hamm went to the front. Milam heard a gunshot and turned to see Sweatt standing over Hamm, who was lying on his back at the side of the road. Milam could tell that Hamm was dead. Sweatt and Milam drove back to Milam's residence, and Sweatt kept a gun on his lap as they drove.

An autopsy later revealed that Hamm died from multiple gunshot wounds to the head. A forensics expert identified shell casings recovered from the Clarkson residence and from the area near Hamm's body as being fired from the same weapon.

A jury found Sweatt guilty of burglary and possession of a handgun by a serious violent felon (SVF), both class B felonies, and of being an habitual offender. The jury could not reach a verdict on a count of murder. The SVF count and the habitual offender charge were both based on the same 1994 rape conviction. The trial court sentenced Sweatt to twenty years for each count, and enhanced the burglary count by thirty years for the habitual offender finding. The court ordered the sentences to run consecutively for a total of seventy years imprisonment.

In his appeal, Sweatt argued in part that the trial court erred by using the same prior conviction to sentence him as an habitual offender and to convict him of handgun possession by an SVF. (Appellant's Br. at 16-18.) The Court of Appeals affirmed, following its earlier decision in Gray v. State, 786 N.E.2d 804 (Ind. Ct. App. 2003), which held that no sentencing error occurs when an habitual offender finding attaches to a different count from handgun possession by an SVF. Sweatt v. State, No. 49A02-0604-CR-303, slip op. (Ind. Ct. App. June 15, 2007). We granted transfer.

**Double Enhancement Implications of Separate Counts**

The line of Indiana cases involving the issue of double enhancement reflects an ongoing examination as to when courts may impose more severe sentences on defendants who have proven to be repeat offenders. Mills v. State, 868 N.E.2d 446 (Ind. 2007). See Pedraza v. State, No. 49S04-0711-CR-516, ___ N.E.2d ___ (Ind. May 22, 2008); State v. Downey, 770 N.E.2d 794 (Ind. 2002); Devore v. State, 657 N.E.2d 740 (Ind. 1995).

This case is another in that line. The question here is whether a given felony conviction can be the basis for an SVF count and also serve as grounds for an habitual offender finding.

3

The habitual offender statute itself does not provide an answer. See Ind. Code Ann. § 35-50-2-8 (West 2007).

The Court of Appeals confronted the same question in Anderson v. State, 774 N.E.2d 906 (Ind. Ct. App. 2002). Anderson was convicted of murder, possession of a firearm by an SVF, carrying a handgun without a license, and intimidation. At sentencing, the court attached the habitual offender penalty to the murder count, and it ordered all other sentences to be served consecutively, for an aggregate sentence of 104 years. The SVF count and the habitual offender count were supported by the same 1987 robbery conviction. Anderson appealed, arguing that under Conrad v. State, 747 N.E.2d 575 (Ind. Ct. App. 2001), the trial court could not enhance his sentence under the habitual offender statute when that finding is based on the same prior conviction as the SVF count.[1] The Anderson court distinguished Conrad, observing that Anderson's habitual offender penalty attached to the murder count, not the SVF count.

> [W]here a defendant is convicted of multiple felonies, one of which is possession of a firearm by a serious violent felon, and is found to be an habitual offender, Conrad does not preclude the use of one felony both to prove the defendant was a serious violent felon and an habitual offender, where the sentence for a felony conviction other than possession of a firearm by a serious violent felon is the sentence that is enhanced under the general habitual offender statute.

Anderson, 774 N.E.2d at 914.

We conclude that a court may avoid double enhancement by attaching the habitual to some offense other than the SVF, but, when counts are ordered served consecutively this is a distinction without a difference. Sweatt's conviction for possession of a firearm by an SVF, based on his 1994 rape conviction, and his status as an habitual offender, based on the same 1994 rape but applied to the burglary conviction, do not by themselves create a double enhancement. The use of the same 1994 rape conviction to support both does not implicate Conrad because the enhancements operate on separate counts. Sweatt does not contend that either sentence, taken

---

[1] We recently approved the Court of Appeals' holding in Conrad that "a defendant convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence enhanced under the general habitual offender statute by proof of the same felony used to establish that the defendant was a 'serious violent felon.'" Mills, 868 N.E.2d at 452.

4

alone, constitutes an improper double enhancement, and we conclude that they pass muster separately.

The aggregate sentence, however, is a different matter. In sentencing an offender who has committed multiple crimes, trial courts face a decision as to whether the sentence on each count should run consecutively or concurrently, or a combination of both. Ind. Code Ann. § 35-50-1-2 (West 2007). In a case where separate counts are enhanced based on the same prior felony conviction, ordering the sentences to run consecutively has the same effect as if the enhancements both applied to the same count.[2] This result is different only in form from the multiple enhancements the Court of Appeals found improper in Conrad. On the other hand, if the trial court orders the sentences to run concurrently, the enhancements, though duplicative in name, operate just once to increase the defendant's term of imprisonment.[3]

The potential penalties flowing from various criminal acts are first and foremost a matter for legislative decision. The statutes applicable here do not conclusively answer the question, and the Rule of Lenity suggests that construction should be against the State. On remand, the trial court may consider whether to alter Sweatt's sentence to remedy this defect.

**Conclusion**

We affirm Sweatt's convictions. We summarily affirm the Court of Appeals' disposition of Sweatt's other allegations of error. Ind. Appellate Rule 58(A). Except as otherwise indicated, we affirm.

Sullivan, and Rucker, JJ., concur.
Boehm, J., concurs in part and dissents in part with separate opinion, in which Dickson, J., concurs.

---

[2] Compare Starks v. State, 523 N.E.2d 735 (Ind. 1988), in which we held the applicable statutes did not authorize two consecutive sentences where each was enhanced by an habitual offender finding.

[3] To avoid this problem altogether, the State may choose to forego the elevated felony count but keep the habitual offender charge. Sweatt's charging information listed a fourth count for carrying a handgun without a license, a class A misdemeanor, which did not depend on Sweatt having any prior convictions and which eventually merged into the SVF count. (App. at 36-37, 223.) But for the SVF count, Sweatt could have been sentenced on this misdemeanor to as much as one year in prison, a sentence that would not have constituted double enhancement when combined with the habitual offender penalty.

**Boehm, Justice, concurring in part and dissenting in part.**

I respectfully dissent. In <u>Pedraza v. State</u>, No. 49S04-0711-CR-516, ___ N.E.2d ___ (Ind. May 22, 2008), also decided today, this Court holds that the same prior conviction may serve to elevate a charge and as an aggravating circumstance at sentencing. In this case, the majority holds that the same prior felony may constitute an element of the crime of unlawful possession of a firearm by a serious violent felon, Ind. Code § 35-47-4-5 (2004), and also support a finding that the defendant is a habitual criminal under section 35-50-2-8. Slip op. at 5-6. But the majority holds that if the two convictions occur in the same trial, consecutive sentences cannot be imposed. <u>Id.</u> at 5. For several reasons, I do not believe the statutes support the second conclusion.

First, the majority's view eliminates altogether the practical effect of the crime of possession of a firearm by a serious violent felon in every case in which it is tried with an A felony or a murder and the defendant has two prior felonies, one of which is violent as the statute defines that term. This is the case in many attempted murders, armed robberies, rapes, and murders. Whenever we have such a case, the general habitual offender statute, Ind. Code § 35-50-2-8, prescribes an additional sentence of not less than the advisory sentence for the underlying felony, not to exceed 30 years. Thus, the habitual enhancement for an A felony or murder (with advisory sentences of 30 and 55 years) would be 30 years. <u>Id.</u> §§ 35-50-2-3, -4. The maximum sentence for possession of a firearm by a serious violent felon, a B felony, is 20 years. <u>Id.</u> § 35-50-2-5. If this sentence cannot be consecutive to an A or B felony with at least 20 years added for the habitual enhancement, the possession count will have no effect at all.

Moreover, the general habitual offender statute not only authorizes the trial judge to impose an enhanced sentence for habitual criminals (i.e., those with two prior felony convictions), it directs it:

> The court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years.

6

Id. § 35-50-2-8(h) (West Supp. 2007). Thus, even if the accompanying crime is less than an A felony, the statute requires a finding of habitual offender status to result in an additional sentence of at least the advisory for the underlying crime. It in effect mandates priority of the habitual offender enhancement over consideration of consecutive or concurrent sentences. If possession by a serious violent felon cannot be imposed consecutively to a sentence enhanced under the general habitual offender statute, then once again the possession statute is rendered meaningless.

I agree that the issue presented in this case turns on statutory interpretation, and the language of the relevant statutes gives little direct guidance. It seems to me, however, that the legislature that mandated an enhanced sentence for habitual criminals did not intend that provision to eliminate the penalty for another crime. Further evidence that the legislature intended that separate crimes involving firearms receive independent sentencing significance is found in section 35-50-1-2(e) (2004), which requires the five-year additional term for use of a firearm in felonies defined in section 35-50-2-11 to be served consecutively to the term for the underlying offense.

Second, I do not think the majority's result is dictated by precedent, even if we assume pre-2005 precedent is relevant under the current sentencing statutes. There is no underlying crime of possession of a firearm that is elevated by the defendant's status as a convicted serious violent felon. To be unlawful in the hands of a non-felon, the possession must be of a handgun (not any firearm), unlicensed, and not in the possessor's home or business. Id. § 35-47-2-1. So the prior violent felony conviction, for rape in this case, does not elevate another crime—it is one of the elements that define a separate crime. And, as we hold today in Pedraza, an element of one crime may also be cited by the trial judge as a reason for exercise of the judge's discretion to impose a longer sentence for another, even if the two are tried in the same case.

Third, I do not agree with the majority that attaching the habitual offender enhancement to a different felony in the same case is a distinction without a difference. If the prior serious felony served to enhance an underlying crime, and the same prior offense served to support the habitual offender enhancement, then I would agree that running the two consecutively by reason of the same prior conviction would be problematic. But for the reasons given, I view the prior felony as an element of an underlying crime, not as an enhancement of the penalty for otherwise

7

criminal activity. It is therefore permissible for the trial judge to impose consecutive sentences. Whether it is appropriate to do so in this case is of course a different matter. As I understand the facts of this case, the trial court's judgment to impose consecutive sentences seems well within the range of appropriateness.

Finally, I assume the majority's holding applies only if the serious violent felon count is tried jointly with another crime. If so, it would result in different sentences depending on whether the serious violent felon count was tried separately from the other felony count. The use of a handgun in a crime is distinct from its possession, and double jeopardy does not bar a conviction for both. Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002) ("Carrying the gun along the street was one crime and using it was another." (quoting Mickens v. State, 742 N.E.2d 927, 931 (Ind. 2001))). Similarly here, the possession of a firearm by Sweatt, a serious violent felon, is distinct from its use in the burglary of which he was convicted, and the murder of which he was acquitted. There is no evidence that Sweatt purchased the handgun as part of the same scheme to burglarize the Clarkson residence. Rather, Sweatt and his companions had been watching television, listening to music, having a "rappin" contest, and unsuccessfully trying to get into a night club before going to the Clarkson residence, where Sweatt used a handgun he already possessed. Accordingly, even if the firearm was used in another crime, possession could have been charged in a separate information or indictment and proved without presenting evidence relating to the use of the firearm. See I.C. §§ 35-34-1-9, -10 (requiring joinder only when offenses are "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan" unless the "interests of justice" require otherwise). The sentence from the separate trial could be ordered to run consecutively to the term from the previous trial. Id. § 35-50-1-2(c).

In practice, judging from the cases we see, the possession charge is often joined with other crimes, and it is the defendant who seeks severance of the possession charge to avoid prejudice from the jury's being told that the defendant has been designated a "serious violent felon." See Hines v. State, 801 N.E.2d 634, 635 (Ind. 2004) (requiring bifurcated trial, if requested, or acceptance of defendant's stipulation as to prior conviction because of the prejudice arising from evidence of a prior conviction). Under the majority's opinion, the defendant would have to choose whether to guarantee a concurrent sentence but allow the jury to hear that he is a

"serious violent felon" in a joint trial, or avoid the "serious violent felon" designation but risk a consecutive sentence in a separate trial. If joinder for trial has the effect of precluding consecutive sentences for the possession count and the underlying offense enhanced under the habitual offender statute, the parties and the trial court will be forced to consider the effect of a joint trial on the maximum aggregate sentence. I would think the penal consequences of these crimes, if convictions are obtained, should not be driven in either direction by the joinder decision.

Dickson, J., concurs.